UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL TROFATTER,

    Petitioner,

v.

                                     Case No. 1:08-cv-895
                                     Hon. Robert J. Jonker

MARY BERGHUIS,

    Respondent.

_____/

**REPORT AND RECOMMENDATION**

Petitioner, a former prisoner at a Michigan correctional facility, has filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254.[1]

**I.    Background**

On January 8, 2001, petitioner pled guilty in the Ingham Circuit Court to weapons possession by a felon and discharge of firearms in a dwelling, with a sentence enhancement of habitual offender third applicable to both offenses. Plea Trans (Jan. 8, 2001) (docket no. 16); Sent. Trans. (Feb. 14. 2001) at p. 3 (docket no. 17). During his plea, petitioner admitted that on June 10, 2000, he fired a 12-gauge shotgun at the wall of a house "to scare" his girlfriend. Plea Trans (Jan. 8, 2001) at pp. 12-15. At that time, petitioner was a felon, having been convicted of armed robbery in 1975 and involuntary manslaughter in 1985. *Id.* at pp. 15-16. The court: accepted the plea as

---

[1]Michigan Department of Corrections' public records indicate that petitioner was paroled on March 3, 2011, and will be under supervision until September 3, 2012. *See* Offender Tracking Information System (OTIS), accessible at www.state.mi.us/mdoc. On March 10, 2011, petitioner (Michael Trofatter No. 141756) advised the court of a change of address, and that he could now be reached c/o Project Rehab in Grand Rapids, Michigan. *See* Change of address (docket no. 30). The court notes that in a pending civil rights action in this court, petitioner provided the court with a different address in Haslett, Michigan. *See* Change of address, *Trofatter v. Caruso et al.*, 1:08-cv-1018 (docket no. 146).

voluntary; noted that under a plea agreement a charge for felony firearm and two charges each of conspiracy and delivery of cocaine are would be dismissed; recited an agreement by which petitioner would receive a one-year jail sentence with 30 days credit and remain out on bond until the sentencing; and characterized the plea as a "*Killebrew* plea," i.e., "if the Court decides not to sentence you, in accordance with the plea agreement, that you have a right to withdraw your plea." *Id.* at pp. 1-18.[2]

When sentencing petitioner on February 14, 2001, the court expressed concern over sentencing petitioner to just one year in a county jail, given his record of five felonies and his status as a habitual offender. Sent. Trans. (Feb. 14, 2001) at pp. 1-12. The court felt that agreed to follow the plea agreement of one year in jail, but included an additional term of probation:

> I'll go along with this one year, but you're going to be on probation for four more when you get out and you're going to pay all this restitution. You're going to be a good citizen or you're going to go to prison. Simple as that. I'm nor your friend. . . .
>
> Now, does he [petitioner] was to set his plea aside, Mr. Silverthorn, and go to trial based upon the fact the Court's going to put him on five years probation?

*Id.* at p. 12.

In response to the Judge's position, petitioner withdrew his plea. *Id.* Although petitioner was out on bond, the judge remanded him to the sheriff's custody until the pre-trial services could recommend a new bond. *Id.* at pp. 12-13. During a break in the proceedings, and after petitioner's counsel attempted to negotiate different terms of probation with the judge,

---

[2] A "*Killebrew* Agreement" has been defined as follows: "When the prosecutor and a defendant enter into a binding agreement regarding the disposition of sentence, the trial court may not deviate from the agreement without first allowing the defendant to withdraw his guilty plea. *People v. Killebrew*, 416 Mich. 189, 207; 330 NW2d 834 (1982)." *People v. Sizer*, No. 219177, 2000 WL 33395249 at *1 (Mich. App. Dec. 12, 2000).

petitioner ultimately agreed to rescind his withdrawal of the plea and to proceed with sentencing. *Id.* at pp. 15-16. For his part, the prosecutor asked the court to "adopt the *Killebrew* agreement" made between the prosecutor, petitioner and petitioner's counsel. *Id.* at p. 16.

The court sentenced petitioner to five years probation, costs of $500.00, payment of restitution to Karen Alexi in the amount $500.00 and payment of restitution to State Farm Insurance in the amount of $1,833.38. *Id.* Petitioner was required to spend the first year of his probationary term in the Ingham County Jail with credit for 33 days previously served, to participate in impulse control therapy at the jail and to pay the crime victims' right fee of $60.00. *Id.* at pp. 16-17.

On January 11, 2006, petitioner attended a show cause hearing on two probation violations. Show Cause Trans. (docket no. 18). At that time, the court advised petitioner of the violations:

> First, by failing to perform PPT's [sic] as ordered since October 2005. Second, by not paying the amount required towards your court costs and restitution.

*Id.* at p. 3. The judge further advised petitioner that if proven, the allegations could subject him "to a maximum penalty of up to 10 years in prison, and up to eight years in prison based on your original convictions." *Id.*

On January 18, 2006, petitioner pled guilty to the probation violations, at that time being represented by a different attorney, Mr. Howard. Probation Violation Plea Trans. (Jan. 18, 2006) (docket no. 19). At the plea, Count II of the probation violations (i.e., the restitution) was amended to show that petitioner had paid $1,545.00 toward his court costs, with an unspecified balance remaining. *Id.* at p. 3.[3] At the plea hearing, petitioner pled guilty to both probation

---

[3] The parties did not state the amount of restitution that remained unpaid.

violations. Petitioner testified as to Count I that he quit taking the PBTs (personal breathalyzer tests) because he did not stop drinking. *Id.* at p. 5. As to Count II, petitioner testified that since his arrest, he lost his employment and filed for a disability (i.e., Social Security Income or SSI). *Id.* Petitioner testified that he paid $1,545 of the restitution but that there remained a balance owing. *Id.* at pp. 5-6.

At the sentencing held on January 26, 2006, the court advised petitioner that based on his prior conviction as a felon in possession of a firearm and as a third habitual offender, he would be subject to a maximum penalty for the probation violation of up to 10 years in prison, and that his conviction for a discharge of a firearm in a dwelling as enhanced would subject him to a maximum penalty of up to eight years in prison. Probation Violation Sent. Trans. (Jan. 25. 2006) at p. 3 (docket no. 20). The court noted that under the original guidelines as scored the minimum sentence would be 12 to 36 months. *Id.* at p. 4. When asked to address the court, petitioner stated his real problem was drinking which he attributed to his chronic pain. *Id.* at pp. 5-6. Petitioner referred to being caught in a "cycle," i.e., he cannot get disability if he is working and if he stops working, he is in violation of the Court's order to "get a job." *Id.* at p. 6.

The judge ultimately sentenced petitioner as follows:

> Well, I do note that Mr. Trofatter has been on probation since February of 2001. It doesn't appear that he's had a prior violation, but I would also note that the requirements of his original probation were really quite minimal. Furthermore, the original presentence report indicated that Mr. Trofatter to some extent abused alcohol.
>
> Then in September of 2004, a condition was added for PBTs, and I would note that Mr. Trofatter did get a new charge that's in front of this Court, but that charge plays absolutely no roll [sic] on what we are here for today, because you're here today, Mr. Trofatter, solely because you admitted to not doing PBTs that were added to probation in September of 2004 and you told me at the time of the plea that you didn't do them because you were still drinking, as you indicated today. Nevertheless, those PBTS were ordered and it was at no cost. The only requirement was to show up on weekends and it was only on weekends that you had to do it.

> I would note that the seriousness of these original offenses I would put at a very high level. The offense of discharging in a dwelling shows that it was an impulsive act and I would conclude from that impulsive, dangerous act, as well as the indication in the report that Mr. Trofatter was abusing alcohol, I would conclude from those two things that not abusing alcohol would be a very important part of Mr. Trofatter's rehabilitation and his probation.
>
> Also, as I indicated, the seriousness of this offense is very high. It was an act that was done out of anger and the gun was discharged in the dwelling and actually fired into another residence where people were living and posed a severe danger to them of serious injury or loss of life.
>
> In addition, Mr. Trofatter, I note from the original presentence report, has a substantial prior history as a juvenile for two offenses that were they committed by an adult would have been felonies, and then as an adult for a number of offenses, the most serious of which is the armed robbery in 1975 and the manslaughter in 1984.
>
> Furthermore, he also had an operating while impaired in 1999, lending further support for the conclusion that he certainly has an alcohol issue and that PBT's on weekends would be an important part of rehabilitation.
>
> Taking all these factors together, and that is the need for alcohol testing, the need to abstain from alcohol, the seriousness of the original offense, and Mr. Trofatter's prior record, the Court, for purposes of punishment, rehabilitation, protection of society, and deterrence, will sentence Mr. Trofatter to the custody of the Michigan Department of Corrections on Count I for a period of time not less than 36 months nor more than 120 months with credit for 372 days already served, and as to Count II, for a period of not less than 36 months nor more than 96 months also with credit for 372 days already served. These two counts run concurrent to each other.

*Id*. at pp. 7-9.

Petitioner, through counsel, filed a delayed application for leave to appeal to the Michigan Court of Appeals raising one issue:

I.   Is [petitioner] entitled to re-sentencing because the statutory sentencing guidelines were scored as to Offense Variable 1 in violation of the Sixth and Fourteenth Amendments?

*People v. Trofatter*, No. 273182 (Mich. App.) (delayed application for leave to appeal) (docket no. 21). The Michigan Court of Appeals denied the delayed application for lack of merit in the grounds

5

presented. Trotter, No. 273182 (Order, Nov. 2, 2008). Petitioner did not appeal this issue to the Michigan Supreme Court. *See* Affidavit of Corbin, Clerk for the Michigan Supreme Court (docket no. 24).

On January 30, 2007, the trial court denied petitioner's January 26, 2007 "Dual Motion, (Preservation of Issues), Motion to Withdraw Plea after sentencing: Motion for Resentencing, Dated and Erroneous Information Considered at Sentencing" which petitioner brought purportedly under MCR 6.310, 6.429 and 6.500. *See People v. Trofatter*, No. 00-76224-FH (Ingham Cir. Ct.) (Order, January 30, 2007) (docket no. 22); *People v. Trofatter*, No. 00-76224-FH (Ingham Cir. Ct.) (Circuit Court's Docket Sheet) (docket no. 15). The trial court denied the motions under MCR 6.310 and 6.429 as untimely, and allowed petitioner to file an amended motion under MCR 6.500. *People v. Trofatter*, No. 00-76224-FH (Ingham Cir. Ct.) (Order, January 30, 2007) at p. 2.

Petitioner subsequently filed a *pro se* motion for post-judgment relief in the Ingham Circuit Court accompanied by an "Amended Brief in support of motion to set aside or modify judgment under the provisions of MCR 6.502 & 6.508." *See People v. Trofatter*, No. 00-76224-FH (Ingham Cir. Ct.) (Amended Brief in support of post-judgment relief) (docket no. 25). Petitioner raised three issues in his amended brief (in his words):

> I. The Circuit Court's failure to serve defendant, (via P.O. E. Russell), with the order for amendment of order of probation renders that order statutorily defective and unlawful, entitling defendant to relief from judgment.
>
> II. The sentencing court's use of a five year old presentence report, not lawfully updated, denied defendant due process and a sentence based on inaccurate information, entitling defendant to relief from judgment.
>
> III. Ineffective assistance of counsel denied defendant basic due process rights at both probation revocation / show cause hearing and subsequent sentencing, entitling defendant to relief from judgment.

*Id*.  The trial court summarized the issues raised as follows:

> Defendant's claims are threefold.  First, he was not provided with an amended or modified probation order requiring him to undergo PBT testing; *ergo*, there was no probation violation for which to have been sentenced.  Second, the sentencing court improperly relied on a five-year-old presentence investigation report thereby depriving Defendant of due process.  Third, Attorney Howard rendered ineffective legal assistance.

*People v. Trofatter*, No. 00-76224-FH (Ingham Cir. Ct.) (Opinion and Order, June 29, 2007) at p. 2 (docket no. 23).

As an initial matter, the court held that petitioner's motion was procedurally defective, i.e., petitioner did not meet the good cause requirement under MCR 6.508(D) because he could have raised these issues on appeal.  *Id*. at p. 3.  As an alternative determination, the court found that petitioner's claims were without merit.  First, petitioner conceded that his probation agent informed him of the amended petition regarding PBT testing.  *Id*.  Such oral notice of probation is sufficient under Michigan law.  *Id*.  The court also found that petitioner's claim was "totally without merit" as contrary to his guilty plea for the parole violation, in which he testified under oath that he was ordered to take the PBT tests, i.e., "I was ordered to take PBT tests and because I haven't quit drinking, I quit going to take PBT test."  *Id*. (internal citation omitted).  Second, the presentence report was updated as required under MCR 6.445(G), which provides in pertinent part that:

> if a probationer pleads guilty to a violation, the court may . . . revoke probation and impose a sentence of incarceration.  The court may not sentence the probationer to prison without having considered a current presentence report.

*Id*. at p. 4, quoting MCR 6.445(G).  The state court judge noted that during the January 25, 2006 probation violation sentence hearing, both petitioner's counsel and the government acknowledged that the presentence report was up-to-date, both declining to make any additions or corrections to the report.  *Id*. (citing Probation Violation Sent. Trans. at pp. 3-4).  Finally, the court found that

7

petitioner's counsel at the trial court level, Mr. Howard, did not provide ineffective assistance of counsel and petitioner was not prejudiced. *Id*. at pp. 4-5. The court stated in pertinent part:

> The result of the underlying proceedings would not have been different. Defendant received adequate notice of the probation condition, the Court considered a reasonably updated presentence report, and the assertion that Mr. Howard failed to inform Defendant of his (Mr. Howard's) purported terminal cancer does not in and of itself demonstrate prejudice. Defendant's additional arguments are either unpersuasive or without merit.

*Id*. at p. 5.[4]

Petitioner filed a *pro se* delayed application for leave to appeal the Ingham Circuit Court's June 29, 2007 order to the Michigan Court of Appeals, raising the three issues denied in the trial court, and a new issue regarding alleged trial court error (in his words):

> IV.  Did the Circuit Court's refusal to toll time for filing motions impermissably shift burden of proof and prejudice the standard of judicial review, as well as evidence bias, prejudice and contempt to all defendant's pro per, layman's pleadings?

*People v. Trofatter*, No. 281631 (Mich. App.) (delayed application for leave to appeal) (docket no. 22). The Michigan Court of Appeals dismissed the application:

> The delayed application for leave to appeal from the June 29, 2007 order is DISMISSED for lack of jurisdiction since the order in question denied a successive motion for relief from judgment, which was filed after August 1995, where no newly discovered evidence or retroactive change in the law can be found. MCR 6.502(G).

*Id*. (Order, Jan. 3, 2008).

Petitioner then filed a *pro se* application for leave to appeal to the Michigan Court of Appeals, raising the same four issues raised in the Michigan Court of Appeals. *People v.*

---

[4] By way of explanation, in one of his arguments, petitioner stated that on January 11, 2006, Mr. Howard advised petitioner that he had been diagnosed with cancer, and that "it wasn't revealed" to petitioner that the cancer was inoperable until the day after petitioner's sentencing on January 26, 2006. Amended Brief at pp. 18-19 (docket no. 25).

8

*Trofatter*, No. 135908 (Mich.) (Application for leave to appeal) (docket no. 23). The Michigan Supreme Court denied the application because petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *Id*. (Order, July 29, 2008).

On September 23, 2008, Trofatter filed a petition for federal habeas corpus relief under § 2254, raising four grounds:

> I.     The circuit and appellate court's refusal to toll six month period of MCR 6.310 & MCR 6.429 with regard to [petitioner's] initial motion violates both Due Process and Equal Protection Guarantees.
>
> II.    The circuit court's failure to serve [petitioner] with its 9/22/05 ex parte order for amendment of probation order renders said order statutorily deficient and non-enforceable.
>
> III.   The sentencing court's use of a five year old presentence report that was unlawfully updated denied [petitioner] due process of law and a sentence based [on] inaccurate information entitling [petitioner] to resentencing.
>
> IV.    The ineffective assistance of both defense and appellate counsel denied [petitioner] equal protection and due process of law.

Petition (docket no. 1). Although petitioner is no longer incarcerated, he remains in state custody by virtue of his parole. *See Jones v. Cunningham*, 371 U.S. 236, 243 (1963) (a prisoner on parole is considered in custody for purposes of the federal habeas corpus statute).

### II.     Procedural default

Respondent has not attempted to unravel the procedural defects in petitioner's habeas claims. Nevertheless, the court will address those defects, which it considers to be dispositive of this petition. Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Before petitioner may seek such relief in

federal court, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies. *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A). In addition, a habeas petitioner is not entitled to raise claims that were procedurally defaulted in the state court.

Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice." *Gray v. Netherland*, 518 U.S. 152, 162 (1996). Not every state procedural rule will warrant application of the procedural default doctrine. Only a procedural rule that was "'firmly established and regularly followed' by the time as of which it [was] to be applied," *Ford v. Georgia*, 498 U.S. 411, 424 (1991), will support application of the doctrine. "For a habeas claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule, but the state court must also have based its decision on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000).

Here, petitioner seeks habeas relief on both unexhausted and procedurally defaulted claims. Petitioner raised three of the habeas issues in his motion for relief from judgment filed pursuant to MCR 6.500 *et seq*. After the trial court denied the three issues as procedurally defaulted under the state's court rules (with alternative rulings on the merits), petitioner filed an application

10

for leave to appeal to the Michigan Court of Appeals raising those issues. The Michigan Court of Appeals dismissed the application for lack of jurisdiction. Then, petitioner raised those issues, along with a new (fourth) issue in his application for leave to appeal to the Michigan Supreme Court, which denied petitioner's application because he failed to meet the burden of establishing entitlement to relief under MCR 6.508(D). The Sixth Circuit has held that MCR 6.508(D) is a valid procedural bar for habeas purposes. *See Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Burroughs v. Makowski*, 282 F.3d 410, 414 (6th Cir. 2002); *Simpson*, 238 F.3d at 407-08; *Luberda v. Trippett*, 211 F.3d 1004, 1008 (6th Cir. 2000). Consequently, a habeas petitioner's claims are procedurally defaulted in those cases, such as the present case, in which the Michigan Supreme Court expressly relies on MCR 6.508(D) in denying an application for leave to appeal. *Id.* As the last state court rendering judgment in the case, the Michigan Supreme Court's decision denying petitioner's claims on the basis of the state procedural bar of MCR 6.508(D) precludes habeas review. *See Howard*, 405 F.3d at 477; *Burroughs*, 282 F.3d at 414; *Simpson*, 238 F.3d 407. Accordingly, these claims are procedurally defaulted for purposes of federal habeas review.

       Habeas review of a procedurally defaulted claim is precluded unless petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that a failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. "[T]he existence of cause for a procedural default must turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Petitioner does not assert any cause for his procedural default of these issues.

While Trofatter has not alleged any cause for his procedural default, one of his habeas claims seeks relief on the ground that his appellate counsel was ineffective for counsel's "refusal to return to the Circuit Court with the issues now presented." Petition at p. 10. Ineffective assistance of counsel may constitute cause for excusing a procedural default, *see Murray v. Carrier*, 477 U.S. 478, 488 (1986), but only when the performance of counsel was so deficient that it could not be considered the representation guaranteed by the Sixth Amendment. *See Strickland v. Washington,* 466 U.S. 668 (1984). In *Strickland*, the Supreme Court, set forth a two-prong test to determine ineffective assistance of counsel: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. However, even if the court considered petitioner's claim of ineffective assistance of appellate counsel as cause for his procedural default, his claim would fail.

First, petitioner's conclusory assertion of ineffective assistance of appellate counsel is insufficient to raise the issue in a federal habeas proceeding. *See generally, Hill v. Lockhart*, 474 U.S. 52 (1985) (conclusory allegations are insufficient to raise a constitutional issue for ineffective assistance of counsel under *Strickland*); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of appellate counsel are insufficient to raise the claim on habeas review under § 2254).

Second, petitioner failed to exhaust an ineffective assistance of appellate counsel claim in the state courts. "[A]n ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted." *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). Petitioner did not raise an ineffective assistance of appellate counsel

claim in the state court, having raised this claim for the first time in his habeas petition. Petitioner cannot raise these claims in the state court by filing another motion under MCR 6.500 *et seq.* Because petitioner has no further avenues to exhaust his claim of ineffective assistance of appellate counsel in the state courts, this results in a procedural default that bars federal habeas review of those additional claims. "In situations in which a petitioner has failed to fairly present federal claims to the state courts, and a state procedural rule now prohibits the state court from considering them, the claims are considered procedurally defaulted." *Pudelski v. Wilson*, 576 F.3d 595, 605 (6th Cir. 2009). Petitioner's ineffective assistance of counsel claim is itself procedurally defaulted. Accordingly, petitioner cannot demonstrate cause for the procedural default of his other habeas claims.

Petitioner's failure to demonstrate cause prevents federal review of his habeas claims unless the court's failure to do so will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. In *Schlup v. Delo*, 513 U.S. 298, 321 (1995), the Supreme Court described the scope of the fundamental miscarriage of justice exception:

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, the Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

To meet the threshold requirement for actual innocence, a petitioner must persuade the court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 329. In the procedural default context, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623-24 (1998). "To be credible, such a claim [of actual innocence] requires petitioner to support

his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324. Claims of actual innocence are rarely successful because such evidence is unavailable in the vast majority of cases. *Id.* Petitioner offers no such new evidence that he is actually innocent of the crime for which he was convicted. In this regard, an offer of new evidence would be futile, because petitioner admitted that he committed the parole violations which form the basis for his convictions. He has failed to meet the fundamental miscarriage of justice exception. Accordingly, all of petitioner's claims are procedurally barred and not subject to habeas review.

### IV.     Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.

Dated:  August 16, 2011                                         /s/ Hugh W. Brenneman, Jr.
                                                                HUGH W. BRENNEMAN, JR.
                                                                United States Magistrate Judge


ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).